UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

FORREST GENERAL HEALTH                                          PLAINTIFFS
SERVICES, INC., et al.

V.                                    CIVIL ACTION NO. 2:25-CV-142-KHJ-MTP

HEALTHSPRING OF TENNESSEE,                                      DEFENDANTS
INC., et al.

ORDER

Before the Court is Defendants HealthSpring of Tennessee, Inc.;

HealthSpring Life & Health Insurance Company, Inc.; and Cigna Health and Life

Insurance Company, Inc.'s (collectively, "Cigna") [30] Motion to Dismiss.[1] For the

reasons below, the Court denies the motion.

I.    Background

This is a breach-of-contract case over how much a private insurer owes two

Mississippi hospitals for prescription drugs they administered to its Medicare

Advantage enrollees.

First, some background about Medicare Advantage. Congress created the

Medicare Advantage program, also known as Medicare Part C, as an alternative to

traditional Medicare. Medicare Advantage allows participants to receive benefits

through private insurers—Medicare Advantage Organizations ("MAOs")—rather

---

[1] Defendants' corporate structures have undergone recent changes. They refer to themselves collectively as "Cigna" here, and the Court does the same. *See* Reply [34] at 1 n.1.

than through the government. Under traditional Medicare, the Centers for Medicare and Medicaid Services ("CMS") directly reimburses medical providers for their services to Medicare recipients. Under Medicare Advantage, CMS delegates its responsibilities to the MAOs and pays them a fixed fee per enrollee. MAOs then engage providers and compensate them for services rendered. *See Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 343–44 (5th Cir. 2024) (explaining Medicare Advantage structure).

Next, understand a different but related federal healthcare program—the 340B Drug Pricing Program ("340B Program"). Section 340B of the Public Health Services Act requires participating pharmaceutical manufacturers to discount certain drugs for certain providers, typically hospitals who treat Medicare or Medicaid patients at a reduced rate. The 340B Program allows those providers to "turn a profit when insurance companies reimburse them at full price for drugs that they bought at the 340B discount," which in theory helps them better serve low-income patient populations. *See AstraZeneca Pharms. LP v. Fitch*, 766 F. Supp. 3d 657, 660 (S.D. Miss. 2024) (describing 340B Program).

Turn then to this dispute. Cigna is an MAO. *See* Am. Compl. [29] ¶¶ 18–19. Plaintiffs Forrest General Health Services, Inc. and Highland Community Hospital (together, "the Hospitals") are community-hospital participants in the 340B Program. *Id.* ¶¶ 4–5, 13. In 2010, the Hospitals contracted with Cigna to provide outpatient pharmaceutical services to its Medicare Advantage members through the

340B Program. *Id.* ¶¶ 18–19; Sealed Facilities Agreement [25] ("Agreement").[2] Cigna agreed to reimburse the Hospitals for 340B drugs at a percentage of "the prevailing Medicare APC" set by CMS and "based on applicable current year Medicare allowable fee schedule." [29] ¶ 20. For years, CMS set the applicable "Medicare APC" as a drug's average sales price plus six percent ("ASP plus 6%"). *Id.* ¶ 14. Cigna paid the Hospitals using this rate until 2018. *See id.*

Then something drastic happened. In 2018, CMS cut its Medicare rates for 340B drugs from ASP plus 6% to ASP minus 22.5% (or 77.5% of ASP). *Id.* Relying on the Agreement's "prevailing Medicare APC" and "applicable current year" language, Cigna followed suit and lowered the Hospitals' 340B-drug reimbursements to ASP minus 22.5%.[3] *Id.*

CMS maintained the lower rate until 2022 when the United States Supreme Court ruled in *American Hospital Association v. Becerra* that CMS violated its statutory authority by lowering rates without following the Medicare Act's rate-setting procedures. 596 U.S. 724, 734–39 (2022). On remand, the district court returned the issue to CMS "to give the agency the opportunity to remediate its underpayments." *Am. Hosp. Ass'n v. Becerra*, No. 18-2084 (RC), 2023 WL 143337, *1 (D.D.C. Jan. 10, 2023).

---

[2] Because the Agreement contains confidential information, the Court allowed the parties to file it with limited public access. *See* Order [20].

[3] The change was significant. For a hypothetical drug with an ASP of $100, Cigna's reimbursement rate dropped from $106 to $77.50. *See* Mem. in Supp. [31] at 4.

On November 8, 2023, CMS issued a new rule ("2024 Final Rule") providing for lump-sum payments from CMS to Section 340B hospitals to remedy underpayments from 2018 to 2022. *See Medicare Program; Hospital Outpatient Prospective Payment System: Remedy for the 340B-Acquired Drug Payment Policy for Calendar Years 2018–2022*, 88 Fed. Reg. 77150 (Nov. 8, 2023). CMS explained it was "adjusting payment rates back to their default under the statute." 88 Fed. Reg. 77159. It did not require MAOs like Cigna to do the same. *See* 88 Fed. Reg. 77184 ("CMS cannot interfere in the payment rates that MAOs set in contracts with providers and facilities."). And that issue is the heart of this lawsuit.

After CMS issued the 2024 Final Rule, the Hospitals demanded Cigna recalculate its 2018–2022 reimbursements using the pre-2018 ASP plus 6% rate and pay the Hospitals the difference. [29] ¶ 24. Cigna ignored the demand. *Id.* ¶ 25. So the Hospitals sued Cigna in state court alleging breach of contract. *See* State Ct. Compl. [1-2].

Cigna removed the case to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332 and federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). *See* Notice of Removal [1]. After some motion practice, the Hospitals filed their [29] Amended Complaint, reasserting breach of contract and adding breach of the duty of good faith and fair dealing. [29] ¶¶ 29–43. Cigna now asks the Court to dismiss the case under Federal Rule of Civil Procedure 12(b)(6). *See* Mot. to Dismiss [30]; Mem. in Supp. [31].

4

II.   Standard

In reviewing a motion under Federal Rule of Civil Procedure 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citation modified). A valid claim for relief contains "sufficient factual matter, accepted as true," giving the claim "facial plausibility" and allowing "the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). The plausibility standard does not ask for a probability of unlawful conduct but does require more than a "sheer possibility." *Id.* The Court accepts all factual allegations in the complaint as true, but it is not bound to accept legal conclusions, conclusory statements, or bare assertions without factual support. *Id.* The Court considers the pleadings and any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). It may also consider documents a defendant attaches to its motion if the complaint refers to them and they are central to the plaintiff's claims. *Id.* at 498–99.

III.   Analysis

Cigna makes three arguments for pleading-stage dismissal: (1) it paid the Hospitals at the agreed-upon rate—a percentage of "the prevailing Medicare APC"—so there was no breach of contract; (2) the Hospitals' good-faith-and-fair-dealing claim fails because it is derivative of their flawed breach-of-contract claim; and (3) Mississippi's three-year statute of limitations bars any reimbursement

claims arising before August 22, 2022. [31] at 7–8. The Court addresses each argument below.

### A. Breach of Contract

Consider first whether the Hospitals have stated a plausible contract claim. In Mississippi, a breach-of-contract claim has two elements: (1) "a valid and binding contract" and (2) proof that the defendant "has broken or breached" that contract. *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018) (citation modified).[4] The parties agree they executed a valid and binding contract. So the Court must only decide whether the Hospitals' breach allegations withstand Rule 12(b)(6) scrutiny.

The dispute is straightforward. Cigna says it agreed to pay the Hospitals using "the prevailing Medicare APC" and that payment would be "based on applicable current year Medicare allowable fee schedule." [31] at 8–13. And it fulfilled that obligation by making payments at the "then-current year rate," unimpacted by CMS's 2024 retroactive rate adjustments. *See id.* at 12.

The Hospitals disagree, pointing to at least two contract provisions they say Cigna breached. *See* [33] at 14. The first is the same one Cigna relies on—that Cigna would pay based on "the prevailing Medicare APC" and according to "applicable current year" Medicare rates. [29] ¶ 20. The second one required Cigna to "comply with and pay according to applicable federal laws." *Id.* ¶ 21. As the

---

[4] Mississippi law governs. *See* [31] at 8; Mem. in Opp'n. [33] at 10; [25] ¶ 5.10 (Mississippi choice-of-law provision); *see also James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (applying Mississippi substantive law in a diversity case).

Hospitals see it, once CMS declared the 2018–2022 rates unlawful and restored them "to the correct and lawful [pre-2018] rate," Cigna breached both provisions by refusing to make them whole. *Id.* ¶ 23.

Taking these allegations as true as it must at the pleading stage, the Court finds the Hospitals have stated a plausible breach of contract claim. *See Ellis v. Bd. of Trs., McComb Sch. Dist.*, No. 5:23-CV-96-DCB-ASH, 2025 WL 406827, *6–7 (S.D. Miss. Feb. 5, 2025) (sparing a breach of contract claim where language supported the plaintiff's interpretation); *see also Univ. Health Sys. of E. Carolina, Inc. v. Aetna Health, Inc.*, No. 4:25-CV-104-BO-RJ, 2025 WL 2599523, *1–2 (E.D.N.C. Sept. 8, 2025) (denying motion to dismiss on similar facts).

B.  Breach of the Duty of Good Faith and Fair Dealing

Turn next to whether the Hospitals have plausibly alleged Cigna breached the implied duty of good faith and fair dealing. In Mississippi, "all contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 744 (Miss. 2019) (citation modified). Good faith considers the parties' "faithfulness of an agreed purpose" between them, "a purpose which is consistent with justified expectations of the other party." *Id.* (citation modified). Bad faith, on the other hand, "implies some conscious wrongdoing because of dishonest purpose or moral obliquity." *Id.* (citation modified).

Again, both sides agree a binding and enforceable contract exists, but the Hospitals say Cigna is performing that contract in bad faith. Specifically, they

allege "Cigna immediately cut its 340B rates" when CMS lowered its rates in 2018, "thus achieving millions, if not billions, of dollars in savings." [29] ¶ 36. And later, when CMS corrected the rates for 2022 and beyond, Cigna followed suit. *Id.* But it refuses to follow CMS in one critical area—reimbursing the Hospitals for the 2018–2022 difference. *Id.* And that, the Hospitals say, is bad faith. *Id.* ¶¶ 33–43; *see also* [33] at 22–23 (alleging Cigna took "opportunistic advantage" of the 2018 rate cuts but then "refused to apply the corrected rates solely because they benefit [the Hospitals]").

Taking these allegations as true, the Hospitals have stated a plausible good-faith-and-fair-dealing claim.

C. Statute of Limitations

Last, the Court addresses Cigna's statute-of-limitations defense. *See* [31] at 14–16. In response, the Hospitals say they are political subdivisions whose claims Mississippi's three-year limitations period cannot reach. [33] at 24–25. Cigna's [34] Reply is silent.

The Court finds the Hospitals' position well-taken. The [29] Amended Complaint alleges the Hospitals are "licensed Mississippi community hospital[s]." [29] ¶¶ 4–5. So they are unaffected by Cigna's time-bar defense. *See Natchez Reg'l Med. Ctr. v. Quorum Health Res., LLC*, 879 F. Supp. 2d 556, 570–71 (S.D. Miss. 2012) (ruling that limitations period could not run against a municipal hospital).

IV.    Conclusion

For the reasons stated, the Court DENIES the [30] Motion. The Court has considered all the parties' arguments. Those arguments not addressed would not have altered the Court's decision.

SO ORDERED, this 4th day of August, 2026.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE